## In re BLEYER.

### (District Court, S. D. New York. October 27, 1913.)

BANKRUPTCY (§ 408*)—DISCHARGE—OBJECTIONS—GROUNDS—FALSE FINANCIAL STATEMENT—ACTS AS OFFICER OF CORPORATION.

Where a bankrupt as president of a corporation made a materially false statement in writing of its assets and liabilities in order to obtain money on credit from a certain bank, and the bankrupt benefited financially by his misrepresentations as to the condition of the corporation, such misrepresentations constituted a valid ground of objection to his individual application for discharge in bankruptcy, under Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427 [§ 14b (3) added by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797, U. S. Comp. St. Supp. 1911, p. 1496]) providing that obtaining money on credit on a materially false statement in writing made by him to any person for the purpose of obtaining credit from such person shall bar a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Charles E. Bleyer. On specifications of objection to the bankrupt's discharge. Sustained.

Charles E. Bleyer filed a voluntary petition in bankruptcy on January 9, 1913, and was adjudicated a bankrupt on the same day. In due course his application for discharge came up and was opposed by the First National Bank of Easton, Pennsylvania. The specification of objection to discharge (as amended by stipulation) is as follows:

"(1) That such application should not be granted, because of the following facts, which the undersigned charges to be true, viz.: That such applicant has obtained money and property on credit upon a materially false statement in writing, made by him to the First National Bank aforesaid, for the purpose of obtaining credit from the said bank, in that, on or about May 8, 1912, the said bankrupt, as the president of the Hawley Down Draft Furnace Company, did knowingly and fraudulently furnish a materially false statement in writing to the said First National Bank, of the financial condition of the said the Hawley Down Draft Furnace Company, showing assets of $188,733.89 and liabilities of $54,836.31, whereas, in fact and in truth the said assets were much less than the sum of $188,733.89, and the liabilities much greater than $54,836.31, and the said company was in fact at that time insolvent, which said materially false statement was so made by said bankrupt for the purpose of obtaining money and property on credit for his own use and benefit from the said First National Bank, and which materially false statement was relied upon by the said First National Bank, and money and property thereupon was obtained on credit by the said bankrupt, as president of the said the Hawley Down Draft Furnace Company, from the said

First National Bank upon three several notes, dated, respectively, May 8, 1912, June 13, 1912, and July 23, 1912, each for the amount of $5,000 each payable four months after date at the said First National Bank, and each indorsed by the said bankrupt; he, the said bankrupt, thereby becoming individually liable for the payment thereof to the said First National Bank. Whereupon, the said First National Bank became the holder for a valuable consideration of the said three several notes, and the said bankrupt, as president of the said the Hawley Down Draft Furnace Company, obtained from the said First National Bank money and property on credit, to wit, the proceeds of the said notes to the aggregate amount of $15,000, and that he, the said bankrupt, as such ·president of the said·the Hawley Down Draft Furnace Company, knowingly and fraudulently made and caused to be made false entries upon the books of accounts of the said the Hawley Down Draft Furnace Company, and did fraudulently take, convert, and apply to his own use the said $15,000, or a large part thereof, thus as aforesaid obtained on credit, to the prejudice of the First National Bank aforesaid, and that a large part of the said moneys was obtained by said bankrupt for his own and individual use within four months prior to the adjudication of the said bankrupt as a bankrupt, and that the said notes, at the maturity thereof respectively, were each duly presented for payment, and payment therefor duly demanded of the proper persons, according to the tenor and effect thereof, but payment of the same in each instance was refused, and the said notes were respectively protested and still remain due and unpaid."

To the specification the bankrupt has filed exceptions.

Leo Oppenheimer, of New York City, for bankrupt.

Parker & Aaron, of New York City (Charles Adkins Baker, of New York City, of counsel), opposed.

MAYER, District Judge (after stating the facts as above). The objection to the discharge of the bankrupt is based on clause No. 3 of paragraph "b" of section 14 of the Bankruptcy Act, which provides that the bankrupt may be discharged unless he has—

"3. Obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person."

It is contended on behalf of the bankrupt that the objecting creditor alleges corporate acts to bar the bankrupt's individual discharge; in other words, that the money obtained by the bankrupt as president of the corporation on notes of the corporation indorsed by him, did not constitute money obtained by him within the meaning of the act, and that a materially false statement in writing as to the financial condition of a corporation in which the bankrupt is interested, and by means of which statement the bankrupt obtains money or property on credit, is not a statement made "by him" within the meaning of the act. For the purposes of this decision, it is admitted that the bankrupt was to benefit financially by his representations as to the condition of a corporation in which he was interested. The question then comes down to this: In order to bar the discharge must the materially false statement in writing, made for his own benefit, be so made by the bankrupt only in respect of his own property, and must it be made by him in his capacity as an individual as distinguished from his capacity as an officer of a corporation?

The precise question here to be determined has not been passed upon by the courts, although In re Dresser & Co. (D. C.) 144 Fed. 318, is of some service in reaching a conclusion. It seems to me that the

act is broad enough to comprehend a case in which the facts are as in the case at bar. Concededly the statement was in writing and materially false, and money on credit was obtained as the direct result of the statement, and that money was obtained by the bankrupt for his own benefit. The materially false statement in writing was "made by him" for all substantial purposes, and the fact that it was made because he was president of the corporation, and that he signed with that designation or in that capacity, does not relieve him from the responsibility which he undertook when he signed this statement in order to procure money on credit for his own benefit. The distinction between the bankrupt individual and the bankrupt as president of this corporation is, on the particular facts here conceded, too illusory to justify the close construction urged by the learned counsel for the bankrupt. Such a construction might well open the way to fraudulent transactions; and where it may be argued that the phraseology itself, if literally taken, may be susceptible of one of two meanings, that construction should be adopted which the more likely meets the intent of the act as an instrument in the conduct of business by honest methods.

For the reasons outlined, the exceptions are overruled.